## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RALPH GREEN,                    :   Civil Action No. 05-682(NLH)
also known as                  :
RALPH LEON ANDERSON,           :
                               :
        Plaintiff,             :
                               :
    v.                         :   **OPINION**
                               :
D. TORRES                      :
and JOHN DOES 1-5,             :
                               :
        Defendants.            :


**APPEARANCES:**

Ralph Green
1104 Baring Street
Camden, NJ 08103

        *Pro se*

Kenneth B. Goodman, Esquire
Office of the NJ Attorney General
Department of Law & Public Safety
RJ Hughes Justice Complex
P.O. Box 112
Trenton, NJ 08625

        *Attorney for Defendants*


**HILLMAN**, District Judge

        Presently before the Court are the parties' cross-motions for summary judgment on Plaintiff's claims that Defendant violated his constitutional rights when he was arrested for selling a controlled dangerous substance.  For the reasons expressed below, Defendant's motion will be granted and Plaintiff's will be denied.

## BACKGROUND

On May 10, 2004, Defendant Detective Daniel Torres was serving as a "sneak officer" during a "Sneak and Peek Operation" in Camden, New Jersey.  A "Sneak and Peek Operation" entails undercover narcotic officers, or "sneak officers," covertly observing controlled dangerous substance (CDS) transactions to establish the identity of street level narcotic traffickers and buyers.  Once the sneak officers have obtained a detailed clothing description and have identified "stash" locations, they report the information via the radio to the arrest team, who then come to the area to effect the arrests.

According to his police report, on that day Torres observed a man, who was later identified as Plaintiff Ralph Green,[1] exchange a small item from his pocket for paper currency handed to him by two different individuals.  Torres related this information to the arrest team.  The arrest team entered the area and identified themselves, but Green fled on foot.  The officers followed Green into a residence and located him in a bathroom.

Torres reports that the officers heard Green flushing the toilet in order to destroy evidence of CDS.  Torres also reports that Green struggled physically with the officers and resisted arrest, and it took physical and chemical force to subdue and

---

[1]Plaintiff refers to himself as both Ralph Green and Ralph Anderson.  The Court will refer to him as "Green" because it is listed first on the Docket.

arrest him.  Once Green was subdued, Torres states that Green was handcuffed, searched, and placed into the vehicle for transport to the Camden Police Administrative Building for processing. Green was charged with Possession of CDS Crack-Cocaine (2C:35-10a(1)) and Distribution of CDS Crack-Cocaine (2C:35-5).[2]

In his Complaint, Green recounts a different version of events.  Green states that he was standing on the street in front of his house when he noticed a truck "parked really funny on a one way street."  He then went into his second floor bathroom and closed and locked the door.  He heard a "big noise" at the front door and then at the bathroom door.  He moved to unlock the door, and when the officers opened the door, his hands were "up." Green states that four John Doe officers pulled him down onto the floor, and after he was handcuffed, punched, kicked, hit, and stomped on him in the face, head, and "private area."[3]  Green also states that another John Doe officer "maced" Green in the face while he was handcuffed and on the floor.[4]  Green then

---

[2]Green pleaded guilty to those charges.  (Green Dep. at 50:1-4.)  Green also admitted in his deposition that he "did sell drugs on that block that day."  (Green Dep. at 13:19.)

[3]DSFC Ronnie Martin, who conducted the New Jersey State Police internal investigation into Green's allegations, reported that there were no observable injuries to Green in his black and white and color mugshots, which were taken when he was processed at the Camden Police Administrative Building.  (N.J.S.P. Report at 13.)

[4]DSFC Martin reported that one of the arresting officers stated that he sprayed OC spray under the crack of the bathroom

3

claims that he was transported to Virtua hospital, but the officers did not allow him to receive treatment for any of his injuries other than to wash the mace out of his eyes.  Green claims, however, that a nurse gave him a prescription for Percocet.[5]

Green alleges in his Complaint that Torres "allowed his fellow Officers to use unnecessary force with assault abuse and Police brutality as well as filing a fictitious (false) Complaint to cover up what really happened on the date of 5-10-04."  Green also alleges, "All of the Officers of that Task Force Group allowed my Constitutional rights to be violated by law, by use of improper procedure . . . ."  Giving Green's Complaint a liberal reading as required for *pro se* litigants, Green has alleged three constitutional violation claims pursuant to 28 U.S.C. § 1983 against Torres: excessive force, conspiracy to cover-up the excessive force by writing a false police report, and failure to supervise.[6]  Despite his allegations against "John Doe" police

_____

door rather than to Green's face.  (N.J.S.P. Report at 30.)

[5]According to the New Jersey State Police Internal Investigation Report, the records at Virtua Hospital in Camden, New Jersey reveal that Ralph Anderson and/or Ralph Green did not receive treatment on May 10, 2004 or May 11, 2004.  The hospital only had a record of Ralph Anderson receiving treatment in March, 2004. (N.J.S.P. Report at 28.)

[6]Torres has construed Green's Complaint to include a claim for false arrest, presumably based on Green's allegation that Torres filed a "fictitious (false) Complaint to cover up what really happened on the date of 5-10-04."  Rather than a claim of

officers, Green has never amended his Complaint to specifically identify those officers and bring these claims against them. Green and Torres have each moved for summary judgment in his favor.

## DISCUSSION

**A.   Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

The summary judgment standard does not change when the parties have filed cross-motions for summary judgment. See Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987). If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in

---

false arrest, the Court construes this allegation to assert a claim that Torres filed a false police report in order to cover-up the alleged excessive force.  Even if Green attempted to assert a claim for false arrest, however, that claim would fail against Torres.  The proper inquiry in a § 1983 claim based on false arrest is whether the arresting officers had probable cause to believe the person arrested had committed the offense.  See Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).  It is undisputed that Torres was not one of Green's arresting officers.  Consequently, no claim of false arrest can stand against Torres.

favor of the party deserving of judgment in light of the law and undisputed facts.  See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

**B.    Excessive Force**

Green alleges that excessive force was used in effecting his arrest.  In his Complaint, Green alleges that John Doe #1, John Doe #2, John Doe #3, John Doe #4, and John Doe #5 punched, kicked, hit, and stomped on him in the face, head, and "private area."  Green also alleges that one of the John Does "maced" him. No where in Green's Complaint does he allege that Torres was present at his arrest or perpetrated any of this alleged conduct. Further, Green testified in his deposition that he did not know Torres or know whether Torres was there the day he was arrested. (Green Dep. at 53:6-11.)  Without any allegations that Torres used excessive force in effecting his arrest, Green's excessive force claim must fail.  See Gittlemacker v. Prasse, 428 F.2d 1, 3 (3d Cir. 1970) (stating that a claim under § 1983 "must portray specific conduct by state officials which violates some constitutional right of the complainant in order to state a claim for relief").

**C.    Conspiracy to Cover-Up Excessive Force by Filing a False Report**

Green alleges in his Complaint that Torres "allowed his fellow Officers to use unnecessary force with assault abuse and

Police brutality as well as filing a fictitious (false) Complaint to cover up what really happened on the date of 5-10-04," and this violated his constitutional rights.  The Court construes this allegation as a claim that Torres's report of the "Sneak and Peek Operation" conducted on May 10, 2004 failed to include the acts of the John Doe officers in order to conceal their use of excessive force.

In order to assert a claim under § 1983, Green must have suffered a constitutional injury as a result of Torres's alleged omissions.  "Mere allegations of a police cover-up, without allegations of 'actual deprivation [of] or damage [to]' constitutional rights, fails to 'state an adequate claim for relief under section 1983.'"  Green v. New Jersey State Police, Civ. No. 04-0007, 2006 WL 2289528, *4 (D.N.J. 2006) (quoting Landrigan v. City of Warwick, 628 F.2d 736, 742-43 (1st Cir. 1980)).  Green has failed to identify or put forth any evidence establishing how the omission of certain facts from Torres's report caused him any constitutional injury.  As a result, this claim against Torres must also fail.

D.   **Failure to Supervise**

Green also alleges what can be construed as a failure to supervise claim.  Green claims that Torres "allowed his fellow Officers to use unnecessary force with assault abuse and Police brutality."  Green, however, does not set forth any evidence that

7

Torres was the other officers' superior or that he was involved in the conduct surrounding his arrest.  Indeed, Green testified in his deposition, "I don't know Torres personally.  I don't know if Torres really was there at the specific time.  The only way I got Mr. Torres's name was off of the complaint because I felt he was . . . in charge of that group of officers."  (Green Dep. at 53:6-11.)  Because Green must rest upon more than just mere allegations or vague statements to withstand summary judgment, <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001), this claim must also fail.

<u>**CONCLUSION**</u>

For the reasons expressed above, Torres is entitled to judgment in his favor on all of Green's claims against him.  An appropriate Order will issue.


Dated: November 7, 2006                s/ Noel L. Hillman

At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.

8